Surjit P. Soni      (State Bar No. 127419)
Mark L. Sutton      (State Bar No. 120255)
THE SONI LAW FIRM
55 South Lake Avenue, Suite 720
Pasadena, California  91101
Telephone: (626) 683-7600
Facsimile: (626) 683-1199
surj@sonilaw.com
mark@sonilaw.com

Attorneys for Defendant,
Mira Enterprises, Inc.

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| E. & J. GALLO WINERY, a California corporation,<br><br>  Plaintiff,<br><br>  vs.<br><br>MIRA ENTERPRISES, INC., a California corporation,<br><br>  Defendants.<br>_____ | **CASE NO. CV 07-2529 RS**<br><br>**DECLARATION OF SUNIL LALWANI IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE UNDER F.R.Civ.P. 12(b)(3) OR TO TRANSFER UNDER 28 U.S.C. §1404(a)** |

I, Sunil Lalwani, declare:

1.  I am vice president of Defendant Mira Enterprises, Inc. ("Mira" or "Defendant") in this action.  I have had that position at Mira since 1991.  I am personally knowledgeable of the facts contained herein and could and would competently testify thereto if called upon to do so.

**MIRA'S BUSINESS FORM AND PLACES OF BUSINESS**

2.   Mira is a corporation formed under the laws of California.  Mira's only places of business are located at 1349 South Broadway, Los Angeles, California (the company offices) and 1360 South Broadway, Los Angeles, California (where the company leases warehouse space).  Mira has no place of business outside of the Los Angeles area, whether by ownership or by lease.

**THE NATURE AND SIZE OF MIRA'S BUSINESS**

3.   My duties at Mira include, and have included throughout my tenure at the company, a variety of duties that involve all facets of Mira's business including sales, warehousing, accounting, purchasing, importing, trade shows, etc.  I basically do whatever needs to be done as do my brother, Anil Lalwani, the President of Mira, and most of the other employees of Mira.

4.   Mira is a small company and therefore everyone at the company pitches in and performs whatever tasks that need to be accomplished.  Mira is not big enough to categorize employee duties by department.  Mira has 12 full-time employees and no part-time employees.

5.   Mira sells a variety of consumer products under various trademarks including watches.  Mira sells its products almost exclusively to distributors who in turn resell the products to other distributors or retailers (i.e., those business establishments which sell the products to the consuming public). Occasionally, Mira sells products to retailers or directly to the

1 consuming public but such sales are a tiny fraction of Mira's sales
2 (i.e., substantially less than one percent).
3     6.   Mira does not do any direct advertising or promotion
4 of its products. Mira's sole means of promoting its products is to
5 exhibit its goods at trade shows. On average, Mira participates in
6 two trade shows per year.

**MIRA'S BUSINESS AND REGISTRATION CONCERNING THE CARLO ROSSI MARK**

    7.   Mira's business that has given rise to this action is its use of the CARLO ROSSI trademark. Mira first began using the CARLO ROSSI trademark approximately at least by July 1, 2003. Mira has used the CARLO ROSSI mark on only watches since that time for products Mira has sold in the United States.

    8.   Mira adopted the CARLO ROSSI without being aware of the use by any other party, including Plaintiff E&J Gallo Winery, of that mark for alcoholic beverages or any other product.

    9.   Mira applied for a U.S. registration for the CARLO ROSSI mark for watches before it began using the CARLO ROSSI mark in 2003. My understanding is that the CARLO ROSSI mark for watches was approved and published for opposition by the U.S. Patent and Trademark Office in 2004. I further understand that no one opposed registration of our CARLO ROSSI at that time. I also understand that Mira received a registration for the CARLO ROSSI mark in 2006, after there was no opposition.

    10.   After Mira became aware of Plaintiff's use of the CARLO ROSSI mark for wine and other alcoholic beverages, Mira has

consistently believed there would be no confusion among the consuming public or any other damage to Plaintiff's business involving the CARLO ROSSI mark in part because our company's products are so different from those of Plaintiff.

11. Mira has considered using the CARLO ROSSI mark on products other than watches but has never done so for its sales to any customers. Mira imported some samples of consumer products bearing the CARLO ROSSI mark other than watches from a supplier but never sold any CARLO ROSSI products other than watches.

12. I have done an evaluation Mira's business records for the motion to dismiss or transfer this lawsuit to the federal court in Los Angeles. Mira's total sales figures for CARLO ROSSI watches throughout the United States from July 1, 2003, until the present, have been, according to my calculations, $662,183.42.

**DEFENDANT'S CONTACTS WITH THE NORTHERN DISTRICT OF CALIFORNIA**

13. As part of my evaluation of Mira's business records, I have determined that Mira's sales of watches bearing the CARLO ROSSI mark in the federal court system's Northern District of California have been 1.1% of total CARLO ROSSI watch sales in the U.S. since July 1, 2003. I made this determination by determining Mira's overall U.S. sales of CARLO ROSSI watches and such sales in the Northern District of California for 17 representative models of CARLO ROSSI watches out of a total of 80 CARLO ROSSI models.

14. The actual numbers I determined for the 17 models I evaluated was a total of $962.75 in sales to customers in the

1 Northern District and $87,683.50 for all U.S. sales, for CARLO
2 ROSSI watches only.  Based on my experience in sales of my
3 company's products and the consistent proportions I found in
4 calculating the actual numbers for 17 CARLO ROSSI watches, I
5 conclude that the proportion of CARLO ROSSI watches sold by Mira in
6 the Northern District would not significantly change if I
7 calculated the proportions of sales in the Northern District of
8 California for all 80 models of Mira's CARLO ROSSI watches.
9        15.  Based on my evaluation, the total sales of CARLO ROSSI
10 watches into the Northern District of California for all eighty
11 models has been about $7271 since July 1, 2003.  As stated above,
12 the total sales of CARLO ROSSI watches throughout the U.S. has been
13 $662,183.42 since July 1, 2003.
14       16.  In evaluating Mira's business records, I also determined
15 Mira's sales in Northern District of California as a proportion of
16 Mira's overall product sales, for all products (not only CARLO
17 ROSSI products), since July 1, 2003.  I did this for all of Mira's
18 product models, not just representative models, because I could
19 ascertain those numbers from our company's computerized business
20 records much more easily than the sales records limited to sales of
21 CARLO ROSSI watches.  The proportion of Mira's overall product
22 sales in the Northern District of California has been less than .5
23 % (i.e., less than one-half of one percent) of all U.S. sales of
24 all Mira products, since July 1, 2003.
25       17.  Mira has had only three customers in the Northern
26 District of California who have purchased CARLO ROSSI watches from
27

Mira. Mira has had only 13 customers over all in the Northern District of California since July 1, 2003.

18. Mira does no direct advertising to the Northern District and it has no place of business, warehouse, office, employees, bank accounts, business licenses, or any other business contracts with persons or entities in the Northern District.

19. Mira's sales in the Northern District of California are a result of customers within the Northern District reaching out and ordering from Mira rather than any coordinated effort by Mira to promote or sell its wares to merchants in the Northern District.

**MIRA'S BUSINESS IN THE CENTRAL DISTRICT OF CALIFORNIA**

20. In evaluating the 17 out of 80 models of CARLO ROSSI watches, I also determined the sales amounts of CARLO ROSSI watches in the Central District of California since July 1, 2003, namely $33,598.25 for the 17 models. The proportion for Central District sales of CARLO ROSSI watches is thus about 38.3% of all U.S. sales of such watches for the 17 models (namely, $87,683.50). As with the Northern District sales, based on my experience in company sales and the consistency of the numbers for the representative 17 models, I conclude that the proportion of Central District sales of CARLO ROSSI watches for all 80 models would not be significantly different from the sales of the 17 models I evaluated.

21. The greatest proportion of Mira's business in any U.S. District Court of the U.S. is by far in the Central District of California, both for CARLO ROSSI watches and generally, where

Mira's only business premises is located.  The Central District is where the most substantial customers of Defendant are found.

22.   Mira intends to call eight to eleven of its customers from the Central District of California, who have no interest in this lawsuit, to testify about: (1) the limitation of sales of Defendant's CARLO ROSSI products to watches; (2) the absence of instances of actual confusion concerning CARLO ROSSI watches; (3) the types of consumers of Defendants' CARLO ROSSI products; (4) the marketing channels for the allegedly infringing products; (5) the price points at which the allegedly infringing products are sold to consumers.  The personal names, company names and addresses of the witnesses referred to in this paragraph are as follows:

    i.   Ali Dhanani; Crown Watch & Gifts; 218 E. Winston Street # G2; Los Angeles, CA 90013;

    ii.  Rezaul Amin; Eureka Traders; 430 S. Los Angeles Street # 5;Los Angeles, CA 90013;

    iii. Mohammed Faisal; Present Times; 560 S. Los Angeles Street # 41; Los Angeles, CA 90013;

    iv.  Aziz Ramzanali; Watch Time; 1111 Standford Street; Los Angeles Ca 90021;

    v.   Pervaiz Meghani; American Watch Inc., DBA American Time # 2; 560 S. Los Angeles Street # 3; Los Angeles, CA 90013;

    vi.  Asif Dhanani; The Watch Factory; 230 E. Winston Street # 4; Los Angeles, CA 90013;

    vii. Naushad Meghani; American Time # 1; 211 E. 5th Street #

           3; Los Angeles, CA 90013;

   viii.  Paul Huen; Effectron Corporation; 500 S. Los Angeles St # 5; Los Angeles, CA 90013;

   ix.  Young Park; Sky Max Company; 513 S. Los Angeles Street; Los Angeles, CA 90013;

   x.  Abul Hossain; Star Watch Company; 500 S. Los Angeles Street #36; Los Angeles, Ca 90013;

   xi.  Lim Jin Seong; J.K. Watches; 444 S. Los Angeles Street; Los Angeles, CA 90013.

23. These witnesses may refuse to appear voluntarily due to the fear of being sued and the distraction from their business activities, especially if they have to choose whether to take the substantial time to travel to San Francisco from Southern California to testify. If Mira compels them to travel 400 to 500 miles to appear at trial in the Northern District, either Mira's business relationship with these important customers or its defense would suffer accordingly, or perhaps even be lost.

24. I, my brother Anil Lalwani, the President of Mira, and other employees of Mira that are potential witnesses in this case reside in the Central District of California.

/ / /

25. Virtually all of Defendant's evidence for this case, including witnesses and business records are located in the Central District of California.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of June, 2007, at Pasadena, California.

_____
Sunil Lalwani

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action; my business address is 55 South Lake Avenue, Suite 720, Pasadena, California 91101.

On **June 22, 2007**, I caused to be served the foregoing described as **DECLARATION OF SUNIL LALWANI IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE UNDER F.R.Civ.P. 12(b)(3) OR TO TRANSFER UNDER 28 U.S.C. §1404(a)** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope addressed as follows:

D. Peter Harvey, Esq.
Raffi V. Zerounian, Esq.
HARVEY SISKIND LLP
4 Embarcadero Center, 39th Floor
San Francisco, Ca 94111

[X]    (MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid at Pasadena, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[]    (PERSONAL SERVICE) I caused the above referenced document to be personally served by hand on at the addresses listed below.

[]    (VIA FEDERAL EXPRESS) I caused such envelope to be delivered overnight to addresses listed above.

[]    (FACSIMILE) I caused the attached document to be transmitted to the above listed addressee.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **June 22**, **2007** at Pasadena, California.

                                                                                              _____
                                                                                              Tina Amirkhanyan